Mark W. Neis, Attorney #09510
Neis & Michaux, P.A.
Bankruptcy Law Office
825 Bank of America Tower
534 S. Kansas Ave., Ste. 825
Topeka, KS 66603-3446
Tel:  785-354-1471
Fax: 785-354-1170
mark.neis@neismichaux.com
Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF KANSAS
TOPEKA DIVISION

Marvin Allan Schweda                                              Case no. 10-42061-13 JMK
SS#xxx-xx-0752
Vicki Lynn Schweda
SS#xxx-xx-7333

**Debtor's Chapter 13 Plan For Adjustment Of Debts, Dated: 11/15/2010**

Debtor or Debtors (hereafter Debtor) proposes:

**1.     PLAN PAYMENT**

> $1,933.00 Monthly [$892.00 bi-weekly] to be remitted by debtor's employer, Jefferson County, 1230 Walnut, Oskaloosa, KS 66060.   Payable by employer $706 bi-weekly.

        ORDER TO WITHHOLD AND REMIT TO:

> $892.00 BI-WEEKLY to be remitted by debtor's employer Jefferson County, 1230 Walnut, Oskaloosa, KS 66060.

**1a**. Step Payment Plan Provision: Debtor's plan payment will increase to $2,000 per month effective with month number 49 of the plan.   Summary of Plan Payments:  48 monthly plan payments of $1,933 and 12 monthly plan payments of $2,000.

        The first payment is due to the trustee no later than 30 days from the date the bankruptcy case was filed.

**2.     GENERAL PROVISIONS**
Payments shall be $892.00 bi-weekly [equivalent to $1,933 per month] for the plan's initial 48 months, thereafter $2,000 per month from month 49 through month number 60.

**2a.    PLAN LENGTH**

1

Based upon Debtor's Official Bankruptcy Form B22C, the Applicable Commitment Period for this plan is 60 months and 60 times [$0.00] is the amount required to be paid to unsecured creditors. Debtor's household income is above median income for Kansas, requiring the plan to run 60 months (the "applicable commitment period" for above median income households).

Debtor projects the plan will run 60 months without regard to the applicable commitment period for payment to unsecured creditors.

There is NO POOL of funds available for general unsecured claims. Secured claims (including an ongoing mortgage note payments and a mortgage arrearage amount) and administrative expenses require 60 monthly payments of the amounts specified in paragraph "1". (48 payments of $1,933.00 per month and 12 payments of $2,000 per month). NOTE: PER APPLICABLE LOCAL RULE, DEBTOR'S PLAN CALLS FOR PAYMENT OF MORTGAGE NOTE PAYMENTS TO HSBC MORTGAGE, INC., THROUGH THE CHAPTER 13 TRUSTEE AS A SO-CALLED "CONDUIT" PAYMENT.

The amount proposed to be paid for unsecured debt is at least the amount required to be paid for the Applicable Commitment Period.

Per debtor's Schedules I and J, debtor's monthly disposable income including ongoing mortgage note payment is $1,933. Debtor's living expenses (not including home mortgage note paid in plan payment) are $1,933; debtor's chapter 13 plan payment to the trustee is $1,933 which includes a sum sufficient to pay debtor's mortgage note payment of $987 through the chapter 13 trustee as conduit; debtor shows a surplus of $0.00.

Unless the United States Supreme Court determines by precedent that a debtor in a chapter 13 case may pay the balance due to administrative expenses, secured claims, and priority claims within 60 months, with no amount paid to general unsecured claims, debtor will not seek a so-called "early pay off" of the plan prior to the applicable commitment period of 36 months other than by motion to the Court after notice with opportunity for hearing on a motion to amend plan post-confirmation per Code §1329.

**2b.    DISTRIBUTION TO UNSECURED CREDITORS**

Debtor's plan as proposed pays no dividend to general unsecured claims. The amount required to be paid to unsecured creditors pursuant to the "Means Test" is $[0.00], which is at least the amount required to be paid for the Applicable Commitment Period pursuant to the Debtor's Official Bankruptcy Form B22C.

The amount required to be paid to unsecured creditors pursuant to the Liquidation Test is $[0.00] plus the estate's share of the tax refund for the year of the bankruptcy case filing. See paragraph 20, below.

**It is anticipated that no funds will be paid to general unsecured claims without priority. Secured and administrative claims require 60 monthly payments to satisfy, with plan payments of $1,933 (of which $987 or more is payable toward debtor's ongoing mortgage note payment to HSBC Mortgage through trustee as conduit). Debtor's attorney's fee would be paid from any non exempt property including debtor's potential 2010 income tax refunds prior to a dividend to general unsecured claims.**

**3.    ADMINISTRATIVE EXPENSES - TRUSTEES FEES**

The Chapter 13 Trustee shall be paid up to 10% on all funds received by him for

2

disbursement by him.

3a.    **ADMINISTRATIVE EXPENSES - ATTORNEYS FEES**
Proposed preconfirmation attorney fees are $3,600.00. The Debtor has paid $00.00 to the attorney prior to filing.

Debtor's attorney's fees would be paid not less than **$75.00 monthly** concurrent with secured claims. Counsel for Debtor reserves the right to submit additional fee applications either on a time and charges basis or for specific tasks. The Debtor consents to such increases in plan payments as may be necessary to pay such additional fees.

The presumptive fee is $3,100.00 for below median income debtors and $3,600.00 for above median income household income. Debtor's attorney's fee request is $3,600 is consistent with fee guidelines in effect on the petition date for cases filed in the District Of Kansas, Topeka Divisional Office for a debtor with household income above median. Debtor's case is above average complexity including: 1) debtor's conduit plan payment through the chapter 13 trustee; 2) and review and analysis of the mortgage creditor's proof of claim and mortgage creditor's supplying such additional information to the trustee and debtor to facilitate conduit payments. **Pre-discharge declaration have not been billed as part of attorney's application for fees. Debtor's attorney would be paid $300.00 of the total of $3,600 requested upon debtor's completion of the plan and discharge.**

Debtor's attorney's pre confirmation fee will be entirely consumed preconfirmation based on debtor's attorney's statement of services provided and time allotted for tasks in attorney's supporting fee statement. Minimally required necessary efforts in debtor's case included: consultations and preparation of schedules and other pre-confirmation tasks. Services include: preparation of all documents and pleadings; review of documents regarding mortgage loan; foreclosure pleadings; extensive time in preparation and review Schedules A through J, Statement of Financial Affairs, Form 22 "Means Test", Chapter 13 plan, pay advices declaration, electronic filing declaration and service of notice and objection deadline of debtor's chapter 13 plan. Expedited filing due to exigent circumstances at time debtor's case was in preparation for filing included: Past due mortgage note. Other services pre-confirmation include a) Preparing for and attendance at a 341 hearing; b) Supplying copies of tax return to the trustee; c) Review of case prior to hearing on confirmation d) Potential likely attendance at one or more hearings on confirmation of the plan. Post confirmation matters not billed but requiring debtor's attention and time include file maintenance, review of proofs of claim on potentially secured claims for proper documentation of security interests and security agreements; and routine services in file maintenance and file closing procedures. Accordingly, debtor's attorney intends to bill for any future matters necessitating debtor's attorney's involvement, especially referring to filing responsive pleadings or motions to amend plan post confirmation. Such fees will be requested at the time services are performed. Debtor's counsel agrees to reduced monthly fee payments to provide for ongoing payments to debtor's mortgage note arrearage and to make the plan payment affordable. Counsel for debtor reserves the right to submit additional fee applications either on a time and charges basis or for specific tasks. Such additional fees would be paid by application to the Court for allowance and approval, with such additional fees to reduce the pool of funds paid pro rata to general unsecured claims without priority. No additional fee allowances are anticipated. If necessary, debtor agrees to increase plan payments to pay for such additional fee allowances.

3

**4. ADMINISTRATIVE EXPENSES - FILING FEE**

The filing fee of $274.00 has not been paid and shall be paid as an administrative expense by the chapter 13 trustee from payments remitted to the trustee by the debtor or debtor's employer as the first distribution made by the trustee. An application to pay the filing fee by installments accompanied the chapter 13 petition.

**5. ADMINISTRATIVE EXPENSES - CREDIT COUNSELING & FINANCIAL MANAGEMENT COURSE FEES.**

The trustee will not pay the fee for debtor education course required of the debtor after his case is filed and prior to entry of his discharge.

**6. TAX REFUND FOR 2010 - THE YEAR IN WHICH THE DEBTOR FILED THIS BANKRUPTCY**

The estate's aliquot share of tax refunds for 2010, the tax year of the bankruptcy petition for relief, pro rated to the date of the bankruptcy filing, and any prior years, subject to any assignment for attorney's fees, are property of the estate, and must be paid to the chapter 13 trustee, or the chapter 7 trustee in the event of conversion, unless abandoned by the trustee. Debtor understands that failure to turn over the tax refunds may result in a denial of discharge, a judgment against the debtor, and/or criminal prosecution.

**6c. POST PETITION TAX REFUNDS**

All post-petition tax refunds and the prorated post petition portion (85.47% [312/365]) of the refunds for 2010, the tax year of the filing, not subject of an assignment for attorneys fees pursuant to the assignment, shall be retained by debtor as additional living expenses and not as additional income.

**7a. TAX RETURNS**

Federal and state income tax returns required for the preceding four years [2009, 2008, 2007, 2006, and 2005] have been filed.

**8. DOMESTIC SUPPORT OBLIGATIONS**

Neither debtor nor joint debtor has a domestic support obligation (herein "DSO").

**9. PRIORITY TAX CLAIMS**

Debtor shall pay all allowed priority claims under 11 USC §507, without post petition interest. Payments through the Trustee of the principal and interest of the tax obligations due as of the date of the filing of the bankruptcy petition (as determined by the creditor's proof of claim or order of the Court) shall result in a full and total discharge of all obligations of the Debtor for those taxes. Unless placed in controversy, the specific dollar amount to be paid shall be in accordance with the creditor's proof of claim. Unless objected to, the claim shall be deemed allowed. (Certain tax claims may be secured and will be treated accordingly, if they exist.)

Estimates of priority tax claims: Debtor has scheduled NO PRIORITY CLAIMS.

$ [0.00]      Internal Revenue Service
$ [0.00]      State of Kansas
$ [0.00]      Treasurer Jefferson County (dual status as priority and secured)

**10. PROPERTY TO BE SURRENDERED TO LIENHOLDER**
   The following property will be surrendered to the lienholder:

| Collateral to be Surrendered | Creditor With Secured Claim |
|---|---|
| 2009 Chevrolet Equinox SUV | Envista Credit Union |

   Any repossession/foreclosure prior to confirmation of this plan must be obtained by filing a motion and obtaining an order from the Court, unless the automatic stay no longer applies under 11 USC §362©. Upon plan confirmation, the automatic stay will be deemed lifted for the collateral identified above for surrender and the creditor need not file a Motion to Lift Stay in order to repossess, foreclose upon or sell the collateral. This provision is not intended to lift any applicable co-Debtor stay, or to abrogate Debtor's state law contract rights.

**11. REAL ESTATE MORTGAGES AND LIENS**
**a.** Debtor will pay post-petition mortgage payments for real estate he is retaining BY CONDUIT PAYMENT ACCORDING TO STANDING ORDER IN THE DISTRICT OF KANSAS, BEGINNING WITH THE PAYMENT DUE IN FEBRUARY, 2011. The December, 2010, and January, 2011, payments will be paid as administrative expenses through the trustee.
   Pre-petition arrearage, if any, will be paid through the trustee as shown below with other creditors over the life of the plan.

| Lender | Estimated Claim | Estimated Arrearage |
|---|---|---|
| HSBC Mortgage | $122,096 | $ 4,944* |
| **CURRENT MONTHLY PAYMENT:** | **$986.42** | *Past Due Payments & Creditor Advances |

**A.** Conduit payments through chapter 13 trustee. Per applicable Local Bankruptcy Rule, debtor's future mortgage note payments will be paid through the chapter 13 trustee from monies paid by employer withholding. Debtor will attempt to provide the latest accurate information to the trustee to facilitate proper conduit payments by the trustee. The monthly payment due on December, 2010, and January, 2011, will be paid as administrative expenses with a late fee or charge included, per the applicable Local Bankruptcy Rule. **At present, monthly payments are: $986.42. The late fee is $12.50 per best information available to debtor's attorney.**

**B.** Mortgage arrearage to HSBC Mortgage will be paid by the trustee from monies remitted to the chapter 13 trustee in the amount of the available funds after the following secured claims are first paid: HSBC Mortgage contract payment - $986.42 conduit payment (ongoing mortgage note installment payments); Ally Bank vehicle loan; State Bank of Oskaloosa-boat loan; HSBC Retail-ATV loan; and Debtor's attorney's fees ($70-$75 per month). If attorney's fees are paid prior to mortgage note arrearage, the funds that had been paid to debtor's attorney would be paid to mortgage arrearage.
   Average monthly payments to the **arrearage claim of HSBC Mortgage** (estimated and

projected) would be about **$50.00** (approx.) per month for the plan's initial 48 months paid concurrent with the ongoing mortgage note payment to HSBC Mortgage, secured claims, and debtor's attorney's fees as recited immediately preceding. After all other secured claims and debtor's attorney's fees are paid, all available funds would be paid to the arrearage claim of HSBC Mortgage until paid in full. It is anticipated this claim will be paid additional funds available from debtor's plan payment increase starting month number 49 and ending month number 60 of this plan. See paragraph "1" regarding step payment increase at month 49.

**C.** The amount shown for arrearage to mortgage holder HSBC Mortgage is based on latest information available. The amount of the pre-petition arrearage as specified in the creditor's proof of claim shall govern, unless specifically controverted in this plan or by an objection to the claim as required by D. Kan. LBR 3015(b).1, after creditor files its claim for mortgage arrearage.

**D.** Interest at the contract rate will be paid on the portion of the arrearage entitled to be paid interest pursuant to the contract. Debtor believes the amount entitled to be paid interest is $0.00 (zero dollars and zero cents). There are no known corporate advances.

**E.** Absent timely objection, creditor shall be bound by the foregoing provision for interest and/or the interest rate. If the Debtor pays the pre-petition arrearage amount as determined in the foregoing paragraph, together with interest, if any, as specified in the plan, all pre-petition defaults will be cured and the note and other loan documents will be deemed current as of the date of filing, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to the filing of the petition or to declare a default of the note, mortgage, or other loan documents based upon pre-petition events.

**11b.  11 U.S.C. 524(I) TREATMENT OF HOME MORTGAGE PAYMENTS - Application of Post petition Ongoing Installment Payments Made by Debtors**
The ongoing post petition installment payments on the Debtors' home mortgage will be paid by the chapter 13 trustee as conduit for mortgage note installment payments during the pendency of the chapter 13 plan. The payment will be paid to creditors or its Servicer beginning with the payment due on February 1, 2011. Payments for December, 2010, and January, 2011, would be paid as administrative expenses per applicable Local Bankruptcy Rule.
The payments received by the holder or its Servicer from the Debtors for ongoing post petition installment payments will be applied and credited to the Debtors' mortgage account as if the account were current and no pre petition default existed on the petition date in the order of priority specified in the note and security agreement and applicable nonbankruptcy law. If these post petition installment payments are made in a timely manner under the terms of the note, they will be applied and credited without a penalty.

**11c.  11 U.S.C. 524(I) TREATMENT OF HOME MORTGAGE PAYMENTS - Amount of Post Petition Ongoing Installment Payments Made by Chapter 13 Trustee as Conduit.**
The holder and its servicer shall comply with all applicable provisions of the Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA) during the pendency of this plan, and shall make, upon notice to the Debtors, Debtors' counsel and the Trustee, appropriate adjustments to the ongoing installment payment amount to reflect escrow account,

adjustable rate mortgage and other changes required by the note and security agreement. If there is a shortage, deficiency or surplus of funds held in escrow, as defined under RESPA, during the pendency of this plan, the holder or its servicer shall notify the Debtors as required by RESPA, and shall also provide notice to Debtors' counsel and the Trustee.

**11d.  11 U.S.C. 524(I) TREATMENT OF HOME MORTGAGE PAYMENTS - Application of Cure Payments Disbursed by Trustee**

The Debtors will cure the default on the mortgage within a reasonable period of time by making payments on the arrears through the plan, which payments shall be disbursed by the Trustee to the holder or its servicer. The payments disbursed by the Trustee to the holder its servicer shall be applied and credited to the amount necessary to cure the default, which shall be referred to as the "arrears" for the purposes of this plan.

**11e.  11 U.S.C. 524(I) TREATMENT OF HOME MORTGAGE PAYMENTS - Amount of Cure Payments Disbursed by Trustee**

The arrears shall consist of the following items, to the extent they are listed and separately itemized on the holder or its servicer's proof of claim, are reasonable and have been actually incurred, and are authorized and have been properly assessed under the terms of the note and security agreement and applicable nonbankruptcy law:
  any unpaid pre petition installment payments due;
  any unpaid pre petition late fees;
  any unpaid pre petition attorney fees;
  any unpaid pre petition fees for services performed in connection with Debtor's pre petition default or for the purpose of protecting the holder or its servicer's interest in the note and security agreement;
  any unpaid attorney fees and costs incurred post petition but prior to confirmation;
  any pre petition unpaid escrow shortage or deficiency, as defined under RESPA, to the extent not being recovered as part of the unpaid pre petition installment payments provided in (a) above; and
  any post petition interest on the arrears, if expressly provided for in the terms of the note and security agreement.

The amounts required to be paid by the Debtors for the above listed items of arrears in order to cure the default shall be the amounts stated on the holder or its servicer's proof of claim, unless the Debtors or Trustee dispute that amount, in which case the amount of arrears will be the amount ultimately decided by the Court or agreed to by the parties.

**11f.  11 U.S.C. 524(I) TREATMENT OF HOME MORTGAGE PAYMENTS - Additional Payments for Post petition Arrears**

The arrears shall also include any post petition arrearage amounts consisting of the following items, but only to the extent these amounts are reasonable and have been actually incurred, are authorized by the note and security agreement and applicable nonbankruptcy law, and have been approved by court order or agreement between the [*creditor or its servicer*], the Debtors and the Trustee:
  any delinquent post petition installment payments due;
  any unpaid post petition late fees;

7

any unpaid reasonable post petition attorney fees, to the extent not being recovered in paragraph 4(d) above;

any unpaid post petition escrow shortage or deficiency, as defined under RESPA, to the extent not being recovered as part of the unpaid post petition installment payments provided in (a) above; and

any interest on the post petition arrears, if expressly provided for in the terms of the note and security agreement.

**11g.  11 U.S.C. 524(I) TREATMENT OF HOME MORTGAGE PAYMENTS - Mortgage Current upon Plan Completion**

No other fees, costs or amounts incurred by the holder or its servicer during this chapter 13 case and asserted to be due on the Debtors' mortgage account may be collected or charged to the Debtors during the case or after entry of discharge except as permitted by this plan, and no payments received by the holder or its servicer from the Debtors or the Trustee shall be applied and credited except as directed and required by this plan. Prior to completion of payments under this plan, the holder or its servicer may seek a determination concerning the sufficiency of payments received under the plan. Unless the Court orders otherwise, pursuant to an appropriate motion or pleading, an order granting a discharge in this case shall be a determination that all pre petition and post petition defaults with respect to the Debtor's mortgage have been cured within the meaning of § 132(b)(5), and that the Debtors' mortgage account is deemed current and reinstated on the original payment schedule under the note and security agreement as if no default had ever occurred. Any willful failure of the holder or its servicer to credit payments in the manner required by this plan or any act by the holder or its servicer following the entry of discharge to charge or collect any amounts incurred or assessed during the pendency of this chapter 13 case that were not authorized by this plan or approved by the Court after proper notice shall be a violation of 11 U.S.C. § 524(I) and the injunction under § 524(a)(2).

**11h.  REAL ESTATE AD VALOREM TAXES**

Treasurer-Jefferson County, Kansas, as to *ad valorem* real property taxes, are paid by a corporate escrow account; during the plan such escrow reserve payments will be accumulated by the mortgage note holder from payments remitted by debtor through the chapter 13 trustee as conduit; per creditor's mortgage contract, the monthly remittance made by debtor through the trustee will continue to include reserve for escrow of property taxes and property insurance.

**12.  SECURED CREDITORS, "910 CAR LOAN" CREDITORS AND "ONE YEAR LOAN" CREDITORS, OTHER THAN DEBTS SECURED BY REAL ESTATE**

All creditors with claims secured by personal property, and 910 car loan {as defined by 11 USC 1325(a) hanging paragraph} and "One year loan" {as defined by 11 USC 1325(a) hanging paragraph} creditors shall retain their liens pursuant to 11 §USC 1325(a)(5). Secured creditors listed below shall be paid the value of their collateral or the amount of the claim, whichever is less, unless otherwise specified, plus the current discount rate. ("Discount Rate" is "Till" rate, which is Prime plus 1.5%.) Creditors with 910 car loans will be paid the amount of their claim plus the current discount rate.

Secured creditors, 910 car loan creditors and One Year Loan creditors will be required to

release their liens on the collateral at discharge.

Adequate protection in debtor's plan will be provided by debtor's remitting to the chapter 13 trustee monthly plan payments, as described in paragraph 1. Contrary to Code provisions, debtor's remittance to the trustee SHALL NOT BE REFUNDED TO THE DEBTOR, in the event the case is dismissed or is not confirmed, until adequate protection payments are determined and paid to the secured claims listed below, to the extent funds are available. Otherwise, if a creditor files a motion to be paid adequate protection prior to confirmation, to the extent funds are available, the chapter 13 trustee would pay the secured claim holders adequate protection payments for each month beginning the second month following the filing of this bankruptcy case. In the event creditor complies with the "opt out" provisions of D.Kan. LBR 3015(b).1, debtor will pay remit the amounts shown below as pre-confirmation adequate protection payments.

In the event adequate protection is paid by the debtor or the trustee, any adequate protection paid pre confirmation will be credited against the allowed principal secured portion of the creditor. **A CREDITOR MUST FILE A CLAIM TO OBTAIN ADEQUATE PROTECTION AND TO RECEIVE PAYMENTS UNDER THE PLAN. THE PLAN, HOWEVER, WILL DETERMINE THE VALUE OF THE COLLATERAL UNLESS THE OBLIGATION IS A 910 CAR LOAN OR A ONE YEAR LOAN CLAIM.** All adequate protection payments, if any, will be made through the Chapter 13 Trustee pursuant to D. Kan. LBR 3015(b).1(g) unless the "opt out" motion is filed by creditor. If the creditor accepts debtor's plan's provision for adequate protection payments paid from monies held by the trustee, the amounts paid if the case is not confirmed would be the amounts TO THE EXTENT FUNDS ARE AVAILABLE.

If no adequate protection payment is specified, Debtor proposes that creditors will be adequately protected by Debtor promptly beginning to make payments under the plan and for the Trustee to disburse as soon as practicable. If confirmation is delayed, Debtor will join trustee in seeking disbursement of plan payments as if the plan was confirmed.

Claims secured by personal property will be paid equal monthly payments from the funds available to pay those claims after the deduction of Trustee fees. Debtor reserves the right to increase the payments to the secured creditors beyond the equal monthly payment, as Debtor may be willing and able to pay.

The monthly payments proposed are estimates. The amounts may be adjusted up or down by the Trustee, in his discretion, as is necessary to make the plan feasible to pay the secured creditors as required.

Debtor maintains full coverage insurance on all vehicles.

| Insurance Carrier | Insurance Agent |
|---|---|
| As last provided to secured creditors | As last provided to secured creditors |

**13a.    SECURED CLAIMS - 910 Car Loan Creditors**

The following creditors are "910" creditors, as defined in 11 USC §1325(a)(9) who claim a purchase money security interest in a motor vehicle. The Debtor may not cram down the value without the creditor's agreement if the collateral is a motor vehicle acquired for the personal use of the Debtor. The monthly payment specified is an estimate. The actual amount may vary,

9

depending upon the allowed claim.   If additional funds are available, payments may be increased to pay the claim more quicky than proposed.

| Creditor | Collateral | Estimated One Year Claim | Value | Equal Monthly Payment |
|---|---|---|---|---|
| Ally Bank (fmrly GMAC) | 2008 Chevrolet Silverado pickup truck | $21,158 | $26,000 | $396 avg pmt |

**Pay Ally Bank about 60 equal monthly payments of $396.00 with discount interest rate.**

**13b.    SECURED CLAIMS - One Year Loan Claims**
The following creditors are "One Year Loan" creditors, as defined in 11 USC 1325(a)(9) who claim a purchase money security interest in a personal property other than a motor vehicle purchased within one year. The Debtor may not cram down the value without the creditor's agreement.  The monthly payment specified is an estimate.  The actual amount may vary, depending upon the allowed claim.   If additional funds are available, payments may be increased to pay the claim more quicky than proposed.

| Creditor | Collateral | Estimated One Year Claim | Value | Equal Monthly Payment |
|---|---|---|---|---|
| None | Not applicable | | | |

**13c.    OTHER CLAIMS SECURED BY PERSONAL PROPERTY**
The following creditors are secured creditors who claim a lien on personal property other than 910 car claims and one year loan claims.  Cram down applies to this class of creditors if the value of the collateral is less than the debt.  The monthly payment specified is an estimate.  The actual amount may vary, depending upon the allowed claim.   If additional funds are available, payments may be increased to pay the claim more quicky than proposed.

| Creditor | Collateral | Estimated Claim | Value | Equal Monthly Payment |
|---|---|---|---|---|
| State Bank of Oskaloosa, Kansas | Lowe Fishing Boat, Motor, trailer | $9,187 | $9,187 | $172 for 60 mos |

Pay State Bank of Oskaloosa about 60 payments of $172.00 (avg pmt) with discount interest rate.

10

| Creditor | Collateral | Estimated Claim | Value | Equal Monthly Payment |
|---|---|---|---|---|
| HSBC Retail Svcs | Kawasaki UTV | $7,200 | $3,000 | $57 for 60 mos |

Pay HSBC Retail about 60 payments of $57 (avg pmt) with discount interest rate.

| Creditor | Collateral | Estimated Claim | Value | Equal Monthly Payment |
|---|---|---|---|---|
| HSBC Retail Svcs Best Buy | Household items (computer, > 3 yrs old) | $1,528 | $75.00 | $15.00 for 5-6 mos |

**14. LIEN AVOIDANCES**

Debtor will avoid by valuation the junior mortgage lien secured by debtor's homestead, based on the lien's value of $0.00 (zero dollars and zero cents) on the petition date. The motion to avoid lien will be by separate motion filed in lieu of a formal adversary proceeding, with service or process and notice afforded the creditors listed below as though the action were brought as an adversary proceeding. There will be no payment to the claim based on its purported secured status following valuation of the secured claim per Code §506(a) as $0.00 . The claim will be treated and paid, if the claim is filed and allowed, as a general unsecured claim. Upon discharge, the lien, mortgage, indenture and security interest will be extinguished, cancelled, annulled and avoided per Code §506 (d).

| Creditor: | Claim: | Nature of Lien: | Treatment in Plan: |
|---|---|---|---|
| Greentree Acceptance | $30,500 | Junior Mortgage | Per §506 (a), value of lien is $0.00; Per §506(d), lien will be cancelled Avoided, and extinguished at Discharge; Claim is Unsecured. |

**15. SPECIAL CLASS CREDITORS**

Special Class Creditors, if any, are to be paid as specified and will be paid pro rata with secured creditors and arrearage on home mortgages unless otherwise specified. [See student loans, below]

| Special Class | Creditor | Treatment |
|---|---|---|
| *NONE* | | |

**15a. CO-DEBTORS**

Claims with co-debtor shall be paid as specified.

11

| Co-Debtor | Creditor |
|---|---|
| *NONE* | |

**16. STUDENT LOAN OBLIGATIONS**

Creditor:           Nature of Claim:     Treatment In Plan:
Sallie Mae         Educational Loan    Deferred throughout plan; if debtor's income allows, debtor will remit directly no more than $75 per month for 60 months. No anticipated income increase to permit payments.

**17. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    Post-petition payments on executory contracts and unexpired leases that are assumed shall be paid directly to the creditor, unless other wise specified. Any pre-petition arrearage shall be cured by payments to be made direct to the creditor by the Debtor, unless otherwise specified.

| Lease or Contract | Creditor |
|---|---|
| *NONE* | *Not applicable* |

**18. PLAN AMENDMENTS**

    Debtor hereby reserves the right to modify this plan pursuant to 11 USC 1329. Post-petition claims shall be allowed pursuant to 11 USC 1322(b)(6) and paid to the extent of funds available in 60 months.

**19. GENERAL UNSECURED CREDITORS**

    General unsecured claims without priority will be paid without interest after all other unsecured claims with priority, including administrative expenses and priority claims, from the pool of funds to be paid to unsecured creditors, if there is one, either as determined by Official Bankruptcy Form B22C or through satisfaction of the "best interests of creditors test" pursuant to 11 USC 1325(a)(4), or both, if applicable.

**20. BEST INTERESTS OF CREDITORS TEST (LIQUIDATION)**

    Pursuant to 11 USC 1325(a)(4), Debtor proposes to pay to the trustee

| $00.00 plus the estate's share of the pre-petition tax refunds. |
|---|

    This amount represents the liquidation value of non exempt assets that would be subject to liquidation in a hypothetical chapter 7 case.

| $00.00 less deduction of 25% hypothetical chapter 7 trustees fees and 20% costs of liquidation in the follow property: | |
|---|---|
| bank accounts | 0.00 |
| personal property of nominal value that would be abandoned by 7 trustee | 0.00 |

| | |
|---|---|
| Total | 0.00 |

**21. PROPERTY OF THE ESTATE**

In addition to the property specified in 11 USC §541, property of this bankruptcy estate includes all property acquired after the filing of the bankruptcy petition, including earnings. Except as otherwise provided, the Debtor shall remain in possession of all property of the estate.

In the event of conversion to chapter 7, property of the estate shall be the property specified in 11 USC §541 consisting of property of the estate as of the date of the filing of the petition [not date of conversion] that remains in the possession or control of the debtor on the date of conversion pursuant to 11 USC §348(f)(1)(A) and shall not include after acquired property except as provided in 11 USC §541.

IN THE EVENT DEBTOR'S CASE IS CONVERTED TO CHAPTER 7 OF THE CODE, SUBJECT TO THE EXCEPTION SET FORTH IN §348 (f)(2), PROPERTY OF THE ESTATE IN THE CONVERTED CASE SHALL CONSIST OF PROPERTY OF THE ESTATE, AS OF THE DATE OF THE FILING OF THE PETITION, THAT REMAINS IN THE POSSESSION OF OR IS UNDER CONTROL OF THE DEBTOR ON THE DATE OF CONVERSION. UNDER NO CIRCUMSTANCES WILL DEBTOR BE LIABLE FOR PROCEEDS OR BE REQUIRED TO ACCOUNT TO A CHAPTER 7 CASE TRUSTEE FOR ANY OF DEBTOR'S INCOME RECEIVED DURING THE CHAPTER 13 PLAN PRIOR TO CONVERSION OTHER THAN THE ESTATE'S ALIQUOT SHARE OF INCOME TAX REFUNDS ACCRUED ON THE PETITION DATE. UNDER NO CIRCUMSTANCES WILL DEBTOR BE REQUIRED TO ACCOUNT TO A CHAPTER 7 TRUSTEE FOR PROPERTY, INCLUDING INCOME TAX REFUNDS, DEBTOR ACQUIRES OR RECEIVES DURING THE CHAPTER 13 PLAN PRIOR TO CONVERSION WHICH PROPERTY HAS BEEN ACCOUNTED FOR TO THE CHAPTER 13 TRUSTEE AND THEREAFTER ABANDONED OR NOT CLAIMED FOR THE ESTATE.

**22. EFFECT OF CONFIRMATION**

ANY CREDITOR FAILING TO OBJECT TO CONFIRMATION OF THE PLAN IS DEEMED TO HAVE ACCEPTED THE PLAN. AN AGREED ORDER MAY BE ENTERED RESOLVING OBJECTIONS TO CONFIRMATION.

The debtor will retain non exempt property that is of minimal value and would not be administered in a chapter 7 case, and no additional amounts will be paid by the debtor to the estate for benefit of creditors for such property.

If a creditor files a secured claim that is not provided for in the plan, the claim will be allowed as filed unless objected to by the debtor or resolved by plan amendment or agreement of the parties.

All property of the estate will revest in the debtor at discharge, unless otherwise ordered pursuant to 11 U.S.C. §1322(b)(9).

ONCE CONFIRMED BY THE COURT, THIS PLAN BINDS THE DEBTOR AND EACH CREDITOR, WHETHER OR NOT THE CLAIM OF SUCH CREDITOR IS PROVIDED FOR BY THE PLAN, AND WHETHER OR NOT SUCH CREDITOR HAS ACCEPTED, REJECTED OR OBJECTED TO THE PLAN.

Confirmation of the plan shall be deemed a finding by the Bankruptcy Court that the

Debtor has complied with all of the applicable sections of 11 USC §1322 and §1325 and that Debtors have fulfilled all of their pre-confirmation obligations under 11 USC §521. Upon confirmation, the automatic stay shall remain in place until completion of the plan and discharge unless relief has been granted to a creditor by order of the order or the terms of this plan.

In the event, the decisions of this court on plan amount, plan length and/or interest paid on 910 cars loans are reversed or altered by an higher court that is within the appeals path of cases this court hears in this or any other case, the decisions of this court now in effect shall not be law of the case in this case and this plan may be modified to conform with the decisions of the appellate courts.

### 23. CREDITOR LEGAL FEES, COSTS AND CHARGES.

All provisions of the applicable Local Bankruptcy Rule regarding conduit mortgage note payments paid to GMAC Mortgage through the chapter 13 trustee are incorporated herein.

### 24. OTHER PROVISIONS

> There are no non standard provisions in debtor's plan; references to secured claims on debtor's homestead are not intended to impose new obligations or vary from creditor's contract, but instead are implied duty of good faith dealing in consumer loan transactions and/or are requirements imposed by Local Bankruptcy Rule or Standing Orders in the U.S. Bankruptcy Court- District of Kansas.

Submitted by:                                         Dated: Monday, November 15, 2010

S/Mark W. Neis
Mark W. Neis #09510
Neis & Michaux, P.A.
Bankruptcy Law Office
825 Bank of America Tower
534 S. Kansas Ave., Ste. 825
Topeka, KS 66603-3446
Tel: 785-354-1471
Fax: 785-354-1170
Mark W. Neis mark.neis@neismichaux.com
Attorney for Debtor